UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 25-03399-KK-AJRx** | Date: | December 17, 2025 |
|---|---|---|---|
| Title: | ***Fadi Bassam Rouf Shuhaibar v. Fereti Semaia et al.*** | | |

| Present: The Honorable | KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE |
|---|---|

| Dominique Carr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** **(In Chambers) Order GRANTING Petitioner's Ex Parte Application for Temporary Restraining Order [Dkt. 2]**

## I.
## INTRODUCTION

On December 15, 2025, petitioner Fadi Bassam Rouf Shuhaibar ("Petitioner"), who is currently detained in the custody of Immigration and Customs Enforcement ("ICE"), filed a Petition for Writ of Habeas Corpus ("Petition") against respondents Fereti Semaia, Ernesto Santa Cruz, Todd Lyons, Kristi Noem, and Pamela Bondi ("Respondents"). ECF Docket No. ("Dkt.") 1, Petition ("Pet."). On the same day, Petitioner filed the instant Ex Parte Application for Temporary Restraining Order ("Application"), seeking a temporary restraining order ("TRO") to enjoin Respondents from continuing to detain him absent compliance with ICE's internal regulations and due process and ordering his immediate release. Dkt. 2, Application ("App.").

The Court finds this matter appropriate for resolution without oral argument. See Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons set forth below, Petitioner's Application is **GRANTED**.

## II.
## BACKGROUND

As alleged in the Petition, Petitioner is a 35-year-old Palestinian Christian born in the Gaza Strip. Pet. ¶ 25. On November 19, 2016, Petitioner entered the United States on a valid B-1 visa. Id. ¶ 26. After conducting an admissibility review, United States Customs and Border Protection

("CBP") found Petitioner inadmissible under Sections 212(a)(6)(C)(i) and 212(a)(7)(i)(I) of the Immigration and Nationality Act ("INA") because he did not disclose that his brother resided in the United States.  Id.  CBP thereafter ordered Petitioner removed from the United States pending a credible fear interview.  Id. ¶ 27.

At the credible fear interview, Petitioner expressed a fear of returning to Gaza and, thus, received a positive determination.  Id. ¶ 27, Ex. A.  On December 2, 2016, CBP issued a Notice to Appear before an Immigration Judge.  Id.  On or around December 7, 2016, Petitioner was taken into ICE custody.  Id. ¶ 27.

On October 25, 2017, an Immigration Judge denied Petitioner's asylum application and ordered his removal to Israel.  Id. ¶ 28.  Petitioner timely appealed the removal order to the Board of Immigration Appeals ("BIA").  Id.  On January 18, 2018, after fourteen months in detention, Petitioner was released on bond while his appeal was pending.  Id. ¶ 29.  During this time, he attended college, joined a local church, and met his now-fiancé, who is a U.S. citizen.  Id.

On August 17, 2018, the BIA denied Petitioner's appeal.  Id. ¶ 30.  On March 8, 2021, the Ninth Circuit denied Petitioner's petition for review.  Id.

On October 23, 2023, ICE cancelled Petitioner's bond and placed Petitioner on an Order of Supervision ("OSUP") because his removal to Gaza was "impossible and it was not significantly likely he would be removed in the reasonably foreseeable future."  Id. ¶ 31, Ex. B.  Since then, Petitioner has never missed a check-in with ICE and has fully complied with the terms of his OSUP.  Id. ¶ 33.

In May 2024, Petitioner's parents fled Gaza, joining Petitioner and his brother in the United States.  Id. ¶ 32.  Petitioner's parents have pending asylum applications, and Petitioner's mother is currently undergoing treatment for breast cancer.  Id.  While on his OSUP, Petitioner assisted his mother with making her appointments for treatment.  Id. ¶ 6.

On October 15, 2025, Petitioner reported to ICE for a scheduled check-in and was re-detained.  Id. ¶ 34.  Upon re-detaining Petitioner, ICE officials did not inform Petitioner as to the reason why his OSUP was being revoked or ICE's plan to remove him from the United States.  Id. ¶ 35.  When Petitioner questioned why he was being re-detained, the ICE officer stated, "It's a new administration."  Id.  ICE did not provide Petitioner an opportunity to respond to or otherwise challenge his re-detention.  Id. ¶ 36.  In addition, an ICE officer informed Petitioner that ICE "may attempt to send him to a third country."  Id. ¶ 34.  When Petitioner asked to which country ICE would send him, the ICE officer did not respond.  Id.  On October 18, 2025, Petitioner was transferred to Adelanto ICE Processing Center, where he remains pending removal.  Id. ¶ 37.

In November 2025, Petitioner submitted a travel document request and his expired Palestinian passport to the Israeli embassy.  Id. ¶ 38.  The Israeli embassy declined to accept Petitioner's expired passport, and, subsequently, ICE had Petitioner sign a document requesting his passport's renewal.  Id.  Petitioner's passport and travel documents have not yet been issued.  Id. ¶ 40.  Petitioner "was never informed the reasons why ICE now intend[s] to seek removal to Israel" after previously advising him "he would not be sent to Palestine or Israel."  Id. ¶ 39.  It remains unclear if Petitioner's passport will be renewed, or how long it will take as Israel currently does not

allow travel into Gaza, and the United States has not removed any non-citizens to Gaza since July 2023.  Id. ¶ 40.

On December 15, 2025, Petitioner filed the operative Petition against Respondents, raising the following grounds for relief:

1. **Ground One:**  Violation of the Administrative Procedure Act ("APA"); and
2. **Ground Two:**  Violation of the Due Process Clause of the Fifth Amendment ("Due Process Clause").

Id. ¶¶ 43-58.

On the same day, Petitioner filed the instant Application, requesting a temporary restraining order and preliminary injunction ordering his immediate release and enjoining ICE from continuing to detain him without complying with the INA, its implementing regulations, and the Due Process Clause.  App.

On December 16, 2025, Respondents filed a Response to Petitioner's Application.  Dkt. 9. In their Response, Respondents state, "At this time, Respondents do not have an opposition argument that they are able to present."  Id. at 2.

This matter, thus, stands submitted.

### III.
### LEGAL STANDARD

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction.  See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001).  Under Federal Rule of Civil Procedure 65, the Court may grant a temporary restraining order to prevent "immediate and irreparable injury."  Fed. R. Civ. P. 65(b)(1).  Like a preliminary injunction, a temporary restraining order is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008).

The party seeking such relief must establish: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities weighs in its favor; and (4) the injunction is in the public interest ("Winter factors").  See id. at 20.  Courts in the Ninth Circuit also employ "an alternative 'serious questions' standard, also known as the 'sliding scale' variant of the Winter standard."  Fraihat v. U.S. Immigr. & Customs Enf't, 16 F.4th 613, 635 (9th Cir. 2021) (citation modified).  Under the serious questions standard, the four Winter elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another." All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011).  Thus, a TRO may be warranted where there are "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff," and so long as the other Winter factors are also met.  Id. at 1132.

///

///

# IV.
# THE WINTER FACTORS WEIGH IN FAVOR OF GRANTING THE TEMPORARY RESTRAINING ORDER

**A.     LIKELIHOOD OF SUCCESS ON THE MERITS**

The likelihood of success on the merits is the most important Winter factor, which "is especially true for constitutional claims." Junior Sports Mags. Inc. v. Bonta, 80 F.4th 1109, 1115 (9th Cir. 2023) (citing Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012)).  Here, the Court finds Petitioner is likely to succeed on the merits or has at least raised "serious questions" regarding the merits of his claims.

    **1.     Administrative Procedure Act**

        **a.     Applicable Law**

"The legal proposition that agencies may be required to abide by certain internal policies is well-established." Alcaraz v. Immigr. & Naturalization Serv., 384 F.3d 1150, 1162 (9th Cir. 2004). Under the APA, a court must "hold unlawful and set aside" any agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law;" "contrary to constitutional right[;]" or "without observance of procedure required by law[.]" 5 U.S.C. § 706(2).

8 U.S.C. § 1231(a) ("Section 1231(a)") governs the detention, release, and removal of noncitizens with an order of removal.  Under Section 1231(a), a noncitizen who has been ordered removed must be detained during the 90-day removal period.  8 U.S.C. § 1231(a)(1)(A), (2)(A). However, if a noncitizen is not removed within this period, they must be released "subject to supervision under regulations prescribed by the Attorney General." Id. § 1231(a)(3).  While certain noncitizens may be detained beyond the 90-day removal period, such noncitizens, if released, must be subject to the same terms of supervision as under Section 1231(a)(3). Id. § 1231(a)(6) ("Section 1231(a)(6)").

8 C.F.R. § 241.4 ("Section 241.4") and 8 C.F.R. § 241.13 ("Section 241.13") set the terms of supervised release under Sections 1231(a)(3) and 1231(a)(6), including the conditions and procedures under which ICE may revoke release.[1]  8 C.F.R. §§ 241.4(l), 241.13(i).  First, ICE may revoke release when a noncitizen violates a condition of their OSUP.  Id. §§ 241.4(l)(1), 241.13(i)(1).  Second, ICE may revoke release when, "on account of changed circumstances, [ICE] determines that there is a

---

[1] Section 241.4 establishes conditions and procedures for the continued detention of noncitizens beyond the statutory 90-day removal period under Section 1231(a)(6).  See 8 C.F.R. § 241.4(a).  In comparison, Section 241.13 establishes special procedures for noncitizens "who are subject to a final order of removal and are detained under the custody review procedures provided at § 241.4 . . . where the [noncitizen] has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future." Id. § 241.13(a).  While Petitioner primarily discusses Section 241.13 in his Petition and Application, Pet. ¶¶ 43-51; App. at 5-7, it is unclear under which, if any, authority Respondents have revoked Petitioner's OSUP.  Accordingly, the Court considers both provisions.

significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." Id. § 241.13(i)(2). Third, certain officials may exercise their discretion to revoke the release. Id. § 241.4(l)(2).

Upon revocation of release, ICE must provide the noncitizen a copy of the decision "set[ting] forth the reasons for the continued detention." Id. § 241.4(d). Additionally, the noncitizen must be "notified of the reasons for revocation" and afforded "an initial informal interview promptly . . . to respond to the reasons for revocation stated in the notification," id. §§ 241.13(i)(3), 241.4(l)(1).

b.   Analysis

Petitioner claims Respondents violated the APA by failing to comply with the INA and its implementing regulations in re-detaining him. The Court finds Petitioner is likely to succeed on the merits of his APA claim.

First, it is undisputed Petitioner did not receive any notice of revocation upon his re-detention, let alone one "notif[ying] [him] of the reasons for revocation of his . . . release." 8 C.F.R. § 241.13(i)(3); see also id. § 241.4(d), (l)(1). Rather, upon being re-detained, ICE merely informed Petitioner he was being detained because "[i]t's a new administration." Pet. ¶ 35; App. at 7. Further, Petitioner still has not received a written explanation setting forth the reasons for his re-detention since he was re-detained over two months ago. Pet. ¶ 39; App. at 7.

Second, it is undisputed Petitioner did not receive an interview to challenge the revocation of release upon his re-detention. Pet. ¶ 49. Additionally, even if Petitioner was granted such an informal interview, ICE failed to provide adequate notice of the grounds for his re-detention and, therefore, "thwart[ed]" his ability to challenge his re-detention. Santamaria Orellana v. Baker, No. 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025). Thus, ICE denied Petitioner a meaningful "opportunity to respond to the reasons for revocation." 8 C.F.R. §§ 241.13(i)(3), 241.4(l)(1); see also Tran v. Noem, No.: 3:25-cv-02391-BTM-BLM, 2025 WL 3005347, at *3 (S.D. Cal. Oct. 27, 2025) ("In the stressful context of an [] arrest and revocation of release, in order to give effectual notice of the reasons for renewed detention, due process requires written notice so that the [noncitizen] can prepare for the post deprivation informal interview.").

Hence, Petitioner is likely to succeed on his claim that the revocation of his release and subsequent re-detention violated the INA's implementing regulations and, thereby, were "not in accordance with law" and "without observance of procedure required by law" in violation of the APA.[2]  See, e.g., Delkash v. Noem, No. EDCV 01675-HDV-AGRx, 2025 WL 2683988, at *6 (C.D.

---

[2] Even if Respondents provided Petitioner with sufficient notice and an opportunity to be heard, the Court is skeptical ICE can establish a proper reason for revoking Petitioner's OSUP. Here, Respondents do not dispute Petitioner has fully complied with the terms of his OSUP. See Pet. ¶ 33; 8 C.F.R. § 241.13(i)(1). Additionally, it does not appear "changed circumstances" make Petitioner's removal significantly likely in the reasonably foreseeable future in comparison to ICE's first failed attempt to remove Petitioner to Palestine. 8 C.F.R. § 241.13(i)(2); see also Sun v. Noem, No. 3:25-CV-02433-CAB-MMP, 2025 WL 2800037, at *2 (S.D. Cal. Sep. 30, 2025) (noting Section 241.13 "place[s] the burden on ICE to show changed circumstances that make removal significantly likely in the reasonably foreseeable future"); Nguyen v. Hyde, 788 F. Supp. 3d 144, 150 (D. Mass.

Cal. Aug. 28, 2025) ("These procedures are not optional or discretionary; they must be followed, and failure to do so renders the detention unlawful."); M.S.L. v. Bostock, No. 6:25-cv-01204-AA, 2025 WL 2430267, at *15 (D. Or. Aug. 21, 2025) (finding ICE's failure to follow its regulations in re-detaining the petitioner violated the APA); Hoac v. Becerra, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *7 (E.D. Cal. July 16, 2025) (collecting cases in which courts find the petitioner's re-detention unlawful because ICE failed to provide the required interview).

### 2. Due Process Clause

#### a. Applicable Law

Under the Due Process Clause, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. In deciding what process is due before the deprivation of liberty, courts consider: "(1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used, and the value of additional procedural safeguards; and (3) the government's interest, including the burdens of additional procedural requirements." Mathews v. Eldridge, 424 U.S. 319, 321 (1976).

#### b. Analysis

Petitioner claims Respondents violated his due process rights by re-detaining him without a pre-deprivation hearing. App. at 8-15. The Court finds Petitioner is likely to succeed on the merits of his Due Process Clause claim.

First, Petitioner has a substantial private interest in remaining out of immigration custody. "Freedom from imprisonment . . . lies at the heart of the liberty" that the Fifth Amendment's Due Process Clause protects. Zadvydas v. Davis, 533 U.S. 678, 690 (2001). "[T]he Due Process Clause applies to all 'persons' within the United States," including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." Id. at 693. Here, Petitioner's conditional release from immigration custody gives rise to a protected liberty interest. See Valencia Zapata v. Kaiser, No. 25-CV-07492-RFL, 2025 WL 2741654, at *6 (N.D. Cal. Sep. 26, 2025) ("Being held in custody by the government at an earlier time does not eliminate one's liberty interest in remaining on release." (citing Morrissey v. Brewer, 408 U.S. 471, 482 (1972))); accord Sun v. Santacruz, No. EDCV-25-02198-JLS-JCx, 2025 WL 2730235, at *5-6 (C.D. Cal. Aug. 26, 2025). Specifically, Petitioner's release has provided him "free[dom] to be with family and friends and to form the other enduring attachments of normal life." Morrisey, 408 U.S. at 482. Since his initial release from immigration custody in 2018, Petitioner has attended college, become involved in a local church, gotten engaged to his fiancé. Pet. ¶ 29. Additionally, Petitioner has supported his parents since their arrival in the United States, including by ensuring his mother receives treatment for her breast

---

2025) (noting Section 241.13 requires an "individualized determination" of changed circumstances). In fact, Petitioner's removal appears significantly less likely given the Israeli government's restriction of travel into Gaza. Pet. ¶ 40. Because Respondents do not "show why obtaining a travel document is more likely," or even possible, "this time around," it is unlikely they can make the individualized determination of changed circumstances necessary to justify the revocation of Petitioner's release. Hoac v. Becerra, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *4-5 (E.D. Cal. July 16, 2025).

cancer. Id. ¶¶ 6, 32. The length of Petitioner's release from custody, amounting to over seven years before his re-detention, adds further weight to Petitioner's interest in his conditional release. See Yang v. Kaiser, No. 2:25-CV-02205-DAD-AC (HC), 2025 WL 2791778, at *8 (E.D. Cal. Aug. 20, 2025) (holding a noncitizen who was released for seven years had a "strong private interest" in continued release due to "the length of time he was on supervised release, as well as [his] ties to his community").

Second, the risk of erroneous deprivation is significant. Civil immigration detention is "nonpunitive in purpose and effect" and is permissible only to reduce the risk of flight or danger to the community. Zadvydas, 533 U.S. at 690. However, as discussed above, ICE has unlawfully re-detained Petitioner even though he has not violated any condition of his OSUP and his removal in the foreseeable future appears significantly unlikely. In fact, in releasing Petitioner on an OSUP, ICE already determined Petitioner did not pose a significant flight risk or danger to the community. Pet. ¶ 27, Ex. A; see also 8 C.F.R. § 241.4(f) (enumerating the factors to be considered when recommending further detention or release of a detained noncitizen). Nothing has occurred since then that would suggest Petitioner no longer meets these criteria. Indeed, the record suggests otherwise, as Petitioner has complied with the terms of his OSUP, attended every required check-in with ICE, and integrated himself into the local community. Pet. ¶ 29; cf. Meneses v. Santacruz, No. CV 25-11206-MCS-PVCx, 2025 WL 3481771, at *4 (C.D. Cal. Dec. 2, 2025) ("This undisputed record raises an inference that the government will have difficulty proving by clear and convincing evidence that Petitioner's detention is necessary to prevent danger to the community or his flight."). Therefore, without the procedural safeguard of a pre-detention hearing, ICE may, as it appears to have done so here, revoke Petitioner's release and re-detain him "at any time," regardless of whether such actions comply with ICE's regulations. Sun, 2025 WL 2730235, at *6 (finding "post-detention safeguards are definitionally inappropriate to address the harm complained of here").

Third, Respondents' interest in re-detaining Petitioner and the burden of a pre-detention hearing are low. As noted, Respondents have not shown Petitioner poses a flight risk or danger to the community, especially considering the countervailing evidence offered by Petitioner. Further, Respondents do not show a pre-detention hearing imposes a significant financial or administrative burden. To the contrary, custody hearings in immigration court are "routine" and impose only a "minimal" cost. Singh v. Bowen, No. EDCV 25-03034-CAS-PDx, 2025 WL 3251437, at *7 (C.D. Cal. Nov. 21, 2025) (citation modified) (quoting Singh v. Andrews, No. 1:25-CV-00801-KES-SKG (HC), 2025 WL 1918679, at *8 (E.D. Cal. July 11, 2025)).

Hence, Petitioner is likely to succeed on the merits of his claim that his re-detention violates the Due Process Clause. Accordingly, because Petitioner has demonstrated a strong likelihood of success on the merits of his claims, the first and most important Winter factor weighs in favor of him.

**B.      LIKELIHOOD OF IRREPARABLE HARM**

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017) (citation modified) (quoting Melendres, 695 F.3d at 1002). "Deprivation of physical liberty by detention constitutes irreparable harm." Arevalo v. Hennessy, 882 F.3d 763, 767 (9th Cir. 2018) (citing Hernandez, 872 F.3d at 994). Furthermore, immigration detention imposes collateral irreparable

harms on noncitizens' families, including economic burdens and harms to children whose parents are detained. Hernandez, 872 F.3d at 995.

Here, as stated above, Petitioner's release has been improperly revoked, and Petitioner has been unlawfully detained in violation of the APA and his constitutional right to due process. In addition, Petitioner has been unable to support his mother, who suffers from breast cancer, since his re-detention in ICE custody. See Pet. ¶ 6. Hence, Petitioner and his family are – and will continue to be – irreparably harmed absent relief from this Court.

Accordingly, the second Winter factor weighs in favor of Petitioner.

### C. BALANCE OF EQUITIES AND PUBLIC INTEREST

The final two Winter factors "merge when the Government is the opposing party." Nken v. Holder, 556 U.S. 418, 435 (2009). The Ninth Circuit has recognized "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." Galvez v. Jaddou, 52 F.4th 821, 832 (9th Cir. 2022) (affirming the balance of hardships weighed in favor of plaintiffs alleging the government violated the INA). Specifically, in cases involving removal, "there is a public interest in preventing [noncitizens] from being wrongfully removed." Nken, 556 U.S. at 436.

Here, because Petitioner has demonstrated a likelihood of success on his APA and constitutional claims, the balance of equities and public interest "tips sharply" in his favor. All. for the Wild Rockies, 632 F.3d at 1135. Moreover, Respondents' interest in enforcing immigration laws is not compelling because "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs., 594 U.S. 758, 766 (2021) (citing Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 582, 585-86 (1952)); see also Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs., 777 F. Supp. 3d 1039, 1045-46 (N.D. Cal. 2025), appeal dismissed, No. 25-2358, 2025 WL 1189827 (9th Cir. Apr. 18, 2025) ("[C]ourts regularly find that '[t]here is generally no public interest in the perpetuation of unlawful agency action.'" (quoting League of Women Voters of U.S. v. Newby, 838 F.3d 1, 12 (D.C. Cir. 2016))). Faced with "a conflict between [administrative] concerns and preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships tips decidedly in [Petitioner's] favor." Hernandez, 872 F.3d at 996.

Accordingly, the third and fourth Winter factors weigh in favor of Petitioner.

\* \* \* \* \*

Thus, because all four Winter factors weigh in favor of Petitioner, Petitioner is entitled to injunctive relief in the form of immediate release from immigration custody. As discussed above, Petitioner continues to suffer irreparable harm so long as he remains unlawfully re-detained. See Esmail v. Noem, No. CV 25-08325-WLH-RAOx, 2025 WL 3030590, at *6 (C.D. Cal. Sep. 12, 2025) ("Providing Petitioner an interview ex post facto, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process."). Further, Petitioner's release is necessary to return him to the status quo, which is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (citation modified) (quoting Tanner Motor Livery, Ltd. v. Avis, Inc., 316 F.2d 804, 809 (9th Cir. 1963)).

Here, the last uncontested status is Petitioner's release on supervision before his current re-detention.  See Domingo-Ros v. Archambeault, No. 25-CV-1208-DMS-DEB, 2025 WL 1425558, at *2 (S.D. Cal. May 18, 2025) ("Petitioners seek a prohibitory injunction because they seek to preserve the status quo preceding this litigation—their physical presence in the United States free from detention.").

Finally, Respondents concede they "do not have an opposition argument that they are able to present."  Dkt. 9 at 2.  Accordingly, Petitioner's release from custody is the appropriate remedy.

## V.
## CONCLUSION

For the reasons set forth above, the Court orders as follows:

1. Petitioner's Application for Temporary Restraining Order is **GRANTED**;[3]
2. Respondents are **ORDERED** to immediately release Petitioner from their custody; and
3. Respondents are **ENJOINED** from re-detaining Petitioner without providing him a pre-detention hearing before a neutral decisionmaker where Respondents bear the burden of demonstrating by clear and convincing evidence that Petitioner is a flight risk or a danger such that his physical custody is required.

**IT IS SO ORDERED**.

---

[3] Federal Rule of Civil Procedure 65(c) permits a court to grant injunctive relief "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court 'with discretion as to the amount of security required, if any.'"  Johnson v. Couturier, 572 F.3d 1067, 1086 (9th Cir. 2009) (emphasis removed) (quoting Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003)).  Here, it is unlikely Respondents will incur any significant costs, and requiring a bond "would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public."  Baca v. Moreno Valley Unified Sch. Dist., 936 F. Supp. 719, 738 (C.D. Cal. 1996).  Accordingly, the Court waives the bond requirement.